Ashley A. Marton, OSB 171584
ashley@employmentlaw-nw.com
Craig A. Crispin, OSB No. 82485
crispin@employmentlaw-nw.com
**CRISPIN EMPLOYMENT LAW PC**
1834 SW 58th Avenue, Suite 200
Portland, Oregon 97221
Telephone:  503-293-5770
Fax:  503-293-5766
    Of Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON
(Portland Division)

| | |
|---|---|
| **AMBER HICKS,** | Civil No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| | (Sex Discrimination and Sexual Harassment; Hostile Work Environment; Retaliation) |
| **NATIONSTAR MORTGAGE LLC**, a foreign business limited liability company, formerly known as **SETERUS, INC.**, a subsidiary of **INTERNATIONAL BUSINESS MACHINES CORPORATION**, a foreign business corporation, | **JURY TRIAL REQUESTED** |
| Defendant. | |

### NATURE OF THE ACTION

1. This is an action under the and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*. This complaint alleges unlawful employment practices on the basis of sex.

Page 1 – **COMPLAINT**

2.      This is also an action for violation of Oregon state discrimination laws, ORS 659A.030, pursuant to the court's supplemental jurisdiction.

## JURISDICTION AND VENUE

3.      This court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331.

4.      The court has jurisdiction over plaintiff's state law claims set forth in this complaint pursuant to its supplemental jurisdiction to hear related state law claims under 28 U.S.C. § 1367(a). Both the federal and state claims alleged herein arose from a common nucleus of operative fact, the state action is so related to the federal claim that they form part of the same case or controversy, and the actions would ordinarily be expected to be tried in one judicial proceeding.

5.      The employment practices described herein are alleged to have been committed in the District of Oregon, Portland Division.

## PARTIES

6.      Plaintiff **AMBER HICKS** at all relevant times was a resident and citizen of the State of Oregon who was employed by defendant in the state of Oregon.

7.      Defendant **NATIONSTAR MORTGAGE LLC** ("Nationstar") is a foreign limited liability company with business operations in Washington County. Nationstar was formerly known as **SETERUS, INC**, which is a subsidiary of International Business Machines Corporation. Nationstar is fully-integrated mortgage-servicing company that operates a call center located in Beaverton, Oregon. At all material times, Nationstar employed 15 or more

employees for and is an "employer" for purposed of the claims set forth in this complaint.

8. **SETERUS, INC** is a subsidiary of **INTERNATIONAL BUSINESS MACHINES CORPORATION, INC.** ("IBM), which is a foreign business limited liability company with business operations in various locations within the State of Oregon, including Washington County. At the time of the events alleged herein, Plaintiff was employed by Seterus, Inc, which was a subsidiary of IBM. In January 2019, Seterus, Inc. merged with Nationstar.

## PROCEDURAL REQUIREMENTS

9. Plaintiff timely filed an administrative complaint with the Oregon Bureau of Labor and Industries, Civil Rights Division, and with the Equal Employment Opportunity Commission, in which she alleged the violations against defendant as alleged herein.

10. Plaintiff has timely satisfied all administrative prerequisites, if any, to the filing of the claims set forth in this complaint.

## BACKGROUND FACTS

11. Plaintiff Hicks was hired by Seterus/IBM in January 18, 2016, as a Consumer and Government Affairs Correspondence Specialist in its Loan Servicing Support Division located at the Beaverton, Oregon facility. During the first two years of her employment, Hicks reported to Consumer and Government Affairs Team Lead, Michelle Patterson. After September 2018, Hicks reported to Assistant Vice president Karen McLaughlin.

12. In or around March 2019, Seterus/IBM merged with Nationstar, and Hicks continued her employment with Nationstar as a Research and Resolution Associate II.

13. As part of Hicks's position, she worked with a team of Seterus/IBM employees,

that were each part of the Consumer and Government Affairs ("CGA" Group. There were roughly six or seven team members on the CGA Group. From January 18, 2016 until November 19, 2018, Hicks was part of team that included CGA employee, Michael Bryan.

14.     During the first month of Hicks' employment with Seterus/IBM, other CGA team members told Hicks to avoid Mr. Bryan. It was well known within their group that Mr. Bryan had harassed female employees. Mr. Bryan had developed an reputation of making female employees feel uncomfortable. He was given the moniker, the "perv."

15.     Upon information and belief, Mr. Bryan had been disciplined by Seterus/IBM for sexual harassment and or inappropriate behavior towards female employees on at least two occasions in the past; in 2014 and again 2016.

16.     Beginning in or around May 2016, Mr. Bryan began routinely making unwanted sexual advances towards Hicks, including but not limited to:

(A) Inappropriately touching himself by putting his hands down his pants, and touching his groin, during face to face conversations with Hicks;

(B) Standing behind Hicks and rubbing her shoulders and touching her arms;

(C) Standing behind Hicks while she was working at her computer and pressing his genitals on Hicks' back;

(D) Inappropriately touching Hicks's legs while they were seated together;

(E) Isolating Hicks in a confined space and not letting her leave without inappropriately touching her body; and

(F) Monitoring Hicks' bathroom breaks and following her into private spaces and

Page 4 – **COMPLAINT**
CRISPIN EMPLOYMENT LAW PC
1834 SW 58th Avenue, Suite 200
Portland, Oregon 97221-1455
Telephone: 503-293-5770

inappropriately touching her.

17.     Mr. Brayn's action were not welcome. Hicks rebuffed and rebuked Mr. Byran's advances, which only emboldened his behavior.

18.     In June 2016, Hicks reported to her direct supervisor, Ms. Michelle Patterson, that Mr. Bryan was engaging in sexual harassment and inappropriate workplace behavior. Hicks expressed concerns over her physical safety, as Mr. Bryan was keeping track of her comings and goings and following her into private spaces.  Ms Patterson said she would speak to Mr. Bryan.

19.     Upon information and belief, neither Seterus/IBM nor Ms. Patterson conducted an investigation into Hicks' complaint, or otherwise tookprompt, effective remedial action to stop the unwelcome conduct.

20.     Mr. Bryan continued to sexual harass Hicks, and she reported the treatment to Ms. Patterson again in October 2016. Again, Ms. Patterson said she would look into it; however, the harassment continued.

21.     Beginning in 2017, Mr. Bryan became more aggressive with his sexual advances toward Hicks. He physically isolated Hicks in her cubical and attempted to rub his genitals on Hicks' back. He followed her around the office and tried to pry into Hicks' personal life. He made comments about her family, which made Hicks extremely uncomfortable.

22.     Hicks reported Mr. Bryan's behavior towards her again in June and September 2017. Ms. Patterson said she would elevate the complaints to her manager, Ms. McLaughlin. Ms. Patterson encouraged Hicks to continue to report directly to her in the future. Hicks understood this was one of the proper methods to report harassment.

23. As a result of the ongoing sexual harassment and hostile work environment, Hicks began experiencing symptoms of anxiety and depression. She began shutting down. She experienced anxiety when thinking about going into the office. She had an increasingly difficult time focusing at work and interacting with co-workers. She missed work as a result of the anxiety and Seterus/IBM's failure to address her sexual harassment complaints.

24. For several months, Hicks went out of her way to avoid Mr. Bryan. This often made her job duties more difficult to complete; but she felt it necessary for her health since defendant Seterus/IBM allowed Mr. Bryan to continue on the CGA team despite her complaints of sexual harassment.

25. In June 2018, Mr. Bryan began touching himself in front of Hicks' workspace. He leaned forward and placed his genital area near Hicks' arms and hands. Hicks objected to the treatment and informed Ms. Patterson that his behavior needed to stop. Ms. Patterson said the situation would be handled. However, a few weeks later Ms. Patterson left her employment with Seterus/IBM.

26. After Ms. Patterson left her employment with Seterus/IBM, Hicks informed her new manager, Ms. Karen McLaughlin, as well as Ms. McLaughlin's manager, Sandra McMullen, about the continual harassment that had been ongoing for years. This report took place on October 18, 2018. She informed her managers that she had developed anxiety as a result of the company's failure to act on her reports. She also reported that Mr. Bryan had been known to engage in sexual harassment of female employees since 2014, and that the company had failed to protect her. In response, Ms. McLaughlin . said she couldn't discuss complaints against Mr.

Bryan by other employees, to protect his privacy.

27. Following Hicks' reports, during the week of October 22, 2018, Ms. McLaughlin assigned Hicks to work alone with Mr. Bryan. This made Hicks extremely uncomfortable. Hicks was concerned that Ms. McLaughlin did not take her complaints seriously. She experienced anxiety about coming into work. Mr. Bryan stared down Hicks and made her feel extremely uncomfortable.

28. Throughout this time, Seterus/IBM experienced extreme turnover due to the pending merger with Nationstar. Several members of the CGA team were let go. However, Mr. Byran continued his employment.

29. On November 6, 2018, Hicks spoke with another employee about her situation. This employee encouraged her to speak directly to Human Resources, which she did that same day. Hicks informed Seterus/IBM's Human Resource employee, Lisa Taylor, about the two years of sexual harassment she had experienced. She provided a timeline of her multiple reports to Ms. Patterson and Ms. McLaughlin and her efforts to get help. Ms. Taylor informed Hicks this was the first time she had heard about Mr. Bryan's harassment. Ms. Taylor said Hicks' managers had failed to inform her about the report.

30. On November 7, 2018, Mr. Bryan was placed on leave. The CGA team was advised that he was on a short leave and expected to return. However, on November 13, 2018, Mr. Byran was terminated.

31. Thereafter, Hicks lodged formal complaints about her managers and their failure to report the ongoing sexual harassment. She had been disciplined for missing work due to

anxiety related to harassment and requested the removal of the discipline. Upon information and belief the investigation was cut short after Seterus/IBM merged with Nationstar. Hicks was never informed of the results of the investigation.

32.     Following Mr. Bryan's termination, his workload was shifted to the remaining CGA team members. Hicks was assigned the bulk of the work. On November 19, 2018, Hicks requested assistance on Mr. Bryan's work. In response, Ms. McLaughlin verbally berated Hicks and suggested that the increased workload was her fault. Hicks was devastated. She went on medical leave for anxiety until January 2019.

33.     Following her medical leave, Hicks returned to Seterus/IBM and was told her potion had been taken over by Nationstar. Most managers were laid off. Hicks continued her employment with Nationstar.

## DAMAGES

34.     As a result of the unlawful actions alleged herein, Plaintiff has suffered both emotional and physical damages and is entitled to recover noneconomic damages, including physical, emotional, and mental harm for which she should be compensated in an amount found to be appropriate by a jury based on the evidence presented at trial. Those injuries include anxiety, embarrassment, depression, loss of motivation, loss of the ability to concentrate, pain from physical manifestations of the emotional distress caused by the circumstances described above, and headaches. Plaintiff has sought medical treatment for these injuries and is entitled to recover the cost of such medical treatment.

35.     As a result of the unlawful actions alleged herein, Hicks also suffered economic

CRISPIN EMPLOYMENT LAW PC
1834 SW 58th Avenue, Suite 200
Portland, Oregon 97221-1455
Telephone: 503-293-5770

damages, in the form of lost pay for missing work related to the harassment. She is entitled to recover this minimal amount, and other economic damages incurred in connection with the injuries caused by the actions alleged herein in such amount as may be awarded by a jury based on the evidence presented at trial.

36. Plaintiff is entitled to a declaration that defendant acted in violation of the statutes set forth in this complaint for relief and equitable relief enjoining defendant from future violations of the statutes set forth herein, and such other relief in favor of plaintiff on such terms as the court may direct.

37. Plaintiff is entitled to recover her reasonable attorney's fees, expert witness fees, and other costs of the action to be paid by the defendant pursuant to one or more of the following: 42 U.S.C. § 1988, ORS 659A.885, ORS 20.107.

## FIRST CLAIM FOR RELIEF

**Count One: Violations of 42 U.S.C. §2000e-2(a) – Sex Discrimination and Harassment**

38. Plaintiff incorporates paragraphs 1 through 37, and 44 through 47, as though fully set forth herein.

39. Plaintiff is a female and identifies as female.

40. Defendant's action as alleged herein are discriminatory in the terms and conditions of Hicks' employment, and in fostering a hostile work enviroment, in substantially motivating part due to her sex/gender.

41. Defendant knew, or should have known, of the ongoing and pervasive harassment by Michael Bryan against Plaintiff and did not take prompt, remedial action to stop the

harassment.

42. Defendant's conduct as described herein is in violation of 42 U.S.C. § 12000e-2(a).

## SECOND CLAIM FOR RELIEF

### (Violations of ORS 659A.030(1)(a) - Sex Discrimination and Hostile Work Environment)

43. Plaintiff incorporates paragraphs 1 through 37, and 39 through 42 as though fully set forth herein.

44. Defendant's actions as alleged herein were in violation of ORS 659A.030(1)(a).

45. Defendant subjected Plaintiffs Hicks to a hostile work environment through their continued misconduct in their treatment of Plaintiffs based on her gender. Defendant engaged in a pattern and practice of ignoring and condoning harassment and discrimination against Plaintiff due to her sex. The harassment and discrimination were pervasive, severe, offensive, and outrageous.

46. Plaintiff reported the intentionally abusive conduct based on sex to her direct supervisors, Ms. Patterson and Ms. McLaughlin, on numerous occasions in 2016, 2017 and 2018. It was not until November 2018, that her complaints were investigated.

47. Defendant's actions, through its agents Ms. Patterson and Ms. McLaughlin, had the purpose and effect of creating an intimidating, hostile, and offensive working environment, and had the effect and purpose of unreasonably interfering with Plaintiffs' work, safety, and wellbeing all in violation of ORS 659A.030(1)(a).

## THIRD CLAIM FOR RELIEF

### Count One: (42 U.S.C. § 2000e-3(a) - Retaliation)

48.     Plaintiff incorporates paragraphs 1 through 37, 39, 40, and 46 through 48 as though fully set forth herein.

49.     Plaintiff resisted and opposed discriminatory actions directed towards her by Mr. Bryan and defendant as alleged herein.

50.     Plaintiff's complaints were protected opposition to discrimination under federal law.

51.     Because of plaintiff's protected opposition, defendant engaged in conduct that would dissuade a reasonable workers from making or supporting a charge of discrimination in violation of 42 U.S.C. § 2000e-3(a).

### Count Two: Retaliation - ORS 659A.030(1)(f)

52.     Plaintiff incorporates paragraphs 1 through 37, 39, 40, 46 through 48, and 50 through 52 as though fully set forth herein.

53.     Plaintiff's complaints against Mr. Byran and later against Ms. Patterson and Ms. McLaughlin are protected opposition to discrimination under state law.

54.     In retaliation for plaintiff's protected opposition to violations of ORS 659A.030, defendant retaliated against plaintiff in the terms and conditions of her employment, by ignoring her complaints and increasing her workload, in violation of ORS 659A.030(1)(f).

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff requests the court to:

1. Assume jurisdiction over each of the causes set forth herein.

2. Declare defendant in violation of the statutory claims stated in plaintiff's First, Second and Third Claims for Relief.

3. Grant such injunctive relief in favor of plaintiff as may be appropriate on each of plaintiff's claims for relief.

4. Award plaintiff compensation for her economic damages, as appropriate.

5. Order defendant to make plaintiff whole by providing compensation for personal, noneconomic damages, including physical and emotional pain and suffering, mental anguish, humiliation, and embarrassment, and loss of enjoyment of life in amounts as are determined at trial.

6. Award plaintiff her costs of suit and reasonable attorney fees, costs and expert witness fees on each of plaintiff's claims for relief.

7. Order defendant to pay prejudgment and postjudgment interest on all amounts due to plaintiff as a result of this action, with interest at the prevailing state or federal rate.

8. Order such further or alternative relief in favor of plaintiff as the court deems appropriate.

//

//

//

**JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all questions of fact or combined questions of law and fact raised by this complaint.

**CRISPIN EMPLOYMENT LAW PC**

By:  /s/ Ashley A. Marton
Ashley A. Marton, OSB No. 171584
Ashley@employmentlaw-nw.com
Craig A. Crispin, OSB No. 824852
Of Attorneys for Plaintiff